THE BADGER LUMBER COMPANY, *Appellant,* v. W. GORDON PARKER *et al.* (ALBERT FAULCONER *et al., Appellees*).

No. 17,134.

### SYLLABUS BY THE COURT.

1. LIENS AND LIENHOLDERS—*Time of Filing Lien—Fraud.* A lumber company sold material for the erection of improvements upon real estate, furnishing items from time to time as desired until August 17. January 31, thereafter, it endeavored to collect its bill, and, failing, took security for its payment. The next day it sold two cans of paint and a brush to the debtor and added the price to the bill and sought to maintain thereon a materialman's lien. *Held,* that parties can not by such afterthought and subterfuge increase the time for filing a statement of lien beyond the four months prescribed by statute.

2. ———— *Assignment of Executory Contract as Security for Material.* While as between the original parties to an executory contract for the sale of land a stipulation against assignment is binding, still when the intended purchaser is in possession and has paid about one-fourth of the entire consideration, he may secure a debt for material which he has purchased and with which he has made improvements upon the land, by assigning his interest in the contract, his present interest and investment being such that the vendor could not claim forfeiture under his contract or dispossess the purchaser without an accounting for the payments and improvements made on the land.

Appeal from Cowley district court. Opinion filed June 10, 1911. Reversed.

*John Parman,* and *C. T. Atkinson,* for the appellant.

*J. E. Torrance, O. P. Fuller,* and *Faulconer & Cunningham,* for the appellees.

The opinion of the court was delivered by

WEST, J.: July 1, 1904, W. Gordon Parker contracted with an investment company for a tract of land near Arkansas City for $8760, paying $1500 cash

and agreeing to make a 500-dollar payment on the 1st day of July of each succeeding year until the purchase price was paid; also to pay interest, taxes and insurance. Parker took possession of the property, paid the interest due on January 1, 1905, the 500-dollar payment and interest due July 1, 1905, but defaulted on the interest due January 1, 1906, amounting to $260. In the meantime he had purchased from the Badger Lumber Company certain material for the erection of improvements upon the land. The last item was purchased August 17, 1905. On January 31, 1906, an agent of the lumber company went to the farm to collect the bill amounting to about $755. Not being able to collect it he induced Parker and wife to make an assignment to the lumber company of their interest in the real-estate contract, which was done by a written instrument which was duly acknowledged. On February 1 Parker purchased two cans of paint and a brush of the lumber company, which the latter added to the bill and thereafter sought to file a statement of lien and enforce the same. The contract between the investment company and Parker for the land provided that upon default in any payment all payments theretofore made and all improvements theretofore placed upon the land should be immediately forfeited to the investment company, and contained the further provision that:

"It is further stipulated and agreed that this contract shall not be assigned or any interest in the same transferred by the party of the second part except with the written consent of the party of the first part indorsed thereon."

On February 20, 1906, the lumber company brought an action to foreclose its mechanic's lien. The investment company and Faulconer and Cunningham answered. On September 12 the lumber company filed an amendment to its petition claiming a lien by reason of its assignment, and on November 27 filed a second amendment claiming priority over Faulconer and Cun-

ningham and also over Gibson. On December 22, Faulconer and Cunningham and Gibson filed a joint answer alleging that by reason of the real-estate contract and the assignments Gibson was the owner of the contract. The court gave judgment against Parker, but adjudged that the lumber company had no interest in the real estate by reason of its assignment or its lien and awarded costs in favor of Gibson and Faulconer and Cunningham, who, with the lumber company, are the only parties to this appeal.

Complaint is made that the court erred in dispensing with the jury, but as the issues between the parties to the appeal involved only the claim for lien upon the real estate, the action was properly one for the court so far as these parties are concerned. The other contentions of the appellant are in effect that the court erred in denying a lien upon the real estate.

On February 5, 1906, Faulconer and Cunningham, as attorneys for Parker's mother, procured from him an assignment to her of his contract which was duly acknowledged, Faulconer and Cunningham knowing of the previous assignment to the lumber company. On February 13 Mrs. Parker assigned to Faulconer and Cunningham, and on July 12 they assigned to Gibson, each of these assignments being approved by the investment company by indorsement on the contract or on the duplicate copy thereof. When Gibson took the assignment he kept back $1000 of the consideration to indemnify himself against the lumber company's claim, then in litigation, wherein it was sought to recover by virtue of the mechanic's lien.

It is urged that the statement was filed too late and could not lawfully include the item purchased in February, and also that the assignment to the lumber company not having the consent of the investment company indorsed on the contract was without effect.

The testimony shows conclusively that the account with Parker was practically closed on August 17, 1905,

and that the charge for the paint and varnish was simply an attempt to add it to the bill and thereby continue the account so as to enable the company to file a lien. It was manifestly an afterthought and can not be made use of for the purpose intended. The company had plenty of time in which to protect itself by filing a proper statement, and having allowed this to go by it can not by this sort of plan enlarge the time prescribed by the statute for filing a lien, which is "within four months after the date upon which material was last furnished." (Civ. Code, § 650.) Not only had the transactions ceased on August 17, but the company made out the bill for the amount it claimed and sent an agent to the farm to collect it, and took the assignment as security therefor, all more than four months— more than five months, indeed—after the date of the last purchase. The subterfuge of selling two cans of paint and a brush after this in order to add to the account and extend the time for filing a lien can not be approved. The statute can not be amended by such an act of the parties.

"To permit a contractor, long after the completion of his contract, to revive or keep alive his right of lien by tacking on and adding to his account by filling additional orders for labor or material not contemplated by his original contract, would throw open wide the doors to fraud and collusion, and in many cases defeat the very purpose and object of the statute, as it would enable the favored creditor to keep alive indefinitely his right to a lien, and at the same time prevent the property subject to lien from being reached by other lienholders whose contracts were entered into subsequent to that of his own." (*Cahoon & Bro. v. Fortune Min. & Mill. Co. et al.*, 26 Utah, 86, 96.)

(See, also, *Spencer v. Barnett*, 35 N. Y. 94; *Gilbert, Hedge & Co. v. Tharp et al.*, 72 Iowa, 714; *Pacific Manufacturing Co. v. Brown*, 8 Wash. 347.)

It appears to be the theory of the appellees that Parker's interest in the land reverted *ipso facto* to the investment company upon default of the January in-

terest, and that therefore he had nothing to assign, but that even if he had any remaining interest he could only assign by the written consent of the investment company indorsed upon the contract and that the attempted assignment without such indorsement was void. Parker had paid $2000 in addition to installments of interest, and had placed upon the land improvements, the material for which amounted to $755, and he had a substantial interest and investment which could not be treated as the subject of an absolute forfeiture on the mere default of an interest payment. (*Evans v. Moseley,* 84 Kan. 322.) While the stipulation would protect the investment company from forced acceptance of an undesirable assignee as purchaser, it did not preclude Parker from using this interest and investment as property, which it was, for the purpose of securing his debt. (*Butler v. Rockwell and Gage,* 14 Colo. 125; *Board of Trustees v. Whalen,* 17 Mont. 1; *Fortunato v. Patten,* 147 N. Y. 277; *Niggeler v. Maurin,* 34 Minn. 118, 122; *Brayton v. Jones,* 5 Wis. 117; *Hackett v. Watts,* 138 Mo. 502; *Burrows v. Hovland,* 40 Neb. 464.) By the assignment to the lumber company, Parker intended, as he testified, a second mortgage subject to the Hill Investment Company's claim. It was in fact a mere pledge of his contract, which had cost more than $2000, to secure a debt of about one-third that sum; it was not an attempt to compel the investment company to accept another as purchaser, but was a justifiable recognition and use of the value of his own investment. He remained in possession of the land from which he could not have been ousted without an accounting, and he was using his contract as a means to secure payment for material which had gone to the betterment of the farm. He testified that when Mrs. Parker's attorneys procured from him the assignment to her it was upon the condition and agreement that the claim would be taken care of. Parman, the attorney who procured the assign-

Badger v. Parker.

ment to the lumber company, testified that they proposed replacing this with personal security so that their client could take free from this impediment. At any rate when they, having become assignees of Mrs. Parker, assigned to Gibson, $1000 of the consideration was retained by him as a bond or security against the claim for a materialman's lien, and as the material went to enhance the value of the land by order of one in possession with a substantial interest, it should be paid for out of this fund. The debt has not been paid, the assignment has not been surrendered, and the subsequent assignees, who took with knowledge and could get no greater interest than Parker had, should not be given the benefit of the material without paying for it. The general rule against the assignability of executory contracts containing a similar stipulation, as declared in *American Bonding & Trust Company v. Baltimore & O. S. W. R. Co.*, 60 C. C. A. 52; *City of Omaha v. Standard Oil Company*, 55 Neb. 337; and *Mueller v. Northwestern University*, 195 Ill. 236, and cases cited in these decisions, does not apply on account of the peculiar rights and investment of Parker in the land, and also on account of the recognition given the assignment by the subsequent assignees.

The judgment is reversed with directions to order the amount due the lumber company at the time of its assignment to be paid by Gibson out of the 1000-dollar fund.