789 F.2d 1281
 In the Matter of CHICAGO, MILWAUKEE, ST. PAUL, AND PACIFIC
RAILROAD COMPANY, Debtor.
Appeal of CMC REAL ESTATE CORPORATION.
Escanaba & Lake Superior Railroad Company, Appellee.
 No. 85-2729.
 United States Court of Appeals, Seventh Circuit.
 Argued May 5, 1986.
Decided May 8, 1986.
 
 Barry Sullivan, Jenner & Block, Chicago, Ill., for appellant.
 Terrance M. Cullen, Felhaber, Larson, Fenlon & Vogt, St. Paul, Minn., for appellee.
 Before BAUER, POSNER, and EASTERBROOK, Circuit Judges.
 EASTERBROOK, Circuit Judge.
 
 
 1
 The bankrupt Chicago, Milwaukee, St. Paul & Pacific R.R. got out of the railroad business in February 1985, when it sold all of its rail assets to the Soo Line R.R. The Soo and other railroads bid for the rail assets of the Milwaukee as a bloc, and the district court ordered them sold on that basis. This caused problems because the Escanaba & Lake Superior R.R. held a right of first refusal to buy a line of track between Crivitz and Marinette, Wisconsin, and some trackage rights on to Menominee, Michigan. The agreement granting the Escanaba this right of first refusal contains an arbitration clause.
 
 
 2
 The Escanaba filed at least three demands for arbitration, one against the Soo and two against the Milwaukee. An earlier appeal dealt with the first demand against the Milwaukee. Before the district court entered Order No. 809, which directed the sale of the rail assets to the Soo, an arbitration panel held that the transfer would violate the Escanaba's right of first refusal. Order No. 816 substituted the Soo for the Milwaukee in this arbitration, on the ground that the rail assets the Soo had acquired included liabilities as well as assets. The "asset purchase agreement" controlling who got what transferred to the Soo all "[o]bligations with respect to litigation and claims against the Milwaukee relating to the Railroad." We affirmed this decision, holding that the Crivitz-Marinette line is part of the "Railroad" defined in Order No. 809 and the asset purchase agreement. In re Chicago, Milwaukee, St. Paul & Pacific R.R., 784 F.2d 831, 834 (7th Cir.1986). Order No. 809 partitioned the Milwaukee into a rail division (which the Soo acquired) and a real estate division (now named CMC Real Estate Corp.). Liabilities arising out of the rail operations of the Milwaukee before this mitosis belong to the Soo, we held, and the Soo therefore had to assume the Milwaukee's role in the arbitration even though the liabilities (if any) had arisen, and the arbitration was well underway, before the entry of Order No. 809.
 
 
 3
 The second demand for arbitration met a different fate in the district court. The Escanaba demanded arbitration of damages caused by the Milwaukee's delay in transferring the line to the Escanaba. The Escanaba maintains that the Milwaukee's decision to sell the rail assets as a bloc triggered its right of first refusal, giving it 60 days to buy the line, and that it is entitled to damages caused by the fact that it did not acquire the line until January 1986, after the arbitration panel fixed the price and a district court in Minnesota confirmed the award. See 784 F.2d at 835. (We were informed at oral argument that the Soo has dismissed its appeal of this decision, so the Escanaba is now the undisputed owner of the line.) The Milwaukee asked the district court for a declaratory judgment that the demand to arbitrate pre-transfer damages is inconsistent with Order No. 809. The district judge refused to grant this relief, stating in Order No. 839: "We do not understand any theory by which the Trustee [of the Milwaukee] can transfer to the Soo Railroad his obligation to arbitrate unless the [Escanaba] agrees and the Soo Railroad assumes the obligation. These voluntary acts have presumably not been taken, otherwise this Complaint would not have been filed."
 
 
 4
 The "voluntary acts" to which the court referred have occurred. The Milwaukee's liability, if there is any, to the Escanaba under the arbitration agreement is one arising out of the Milwaukee's rail operations, as opposed to its real estate operations. The asset purchase agreement partitioned the Milwaukee's liabilities along with its assets, and the liabilities follow the assets. The Soo acquired the Crivitz--Marinette line as part of the "Railroad" (the defined term discussed in our previous opinion). The Soo therefore acquired the Milwaukee's liabilities arising out of this line of track. The asset purchase agreement, together with Order No. 809 and Order No. 832 (which confirmed the plan of reorganization and discharged all of the Milwaukee's liabilities not otherwise provided for), relieved the Trustee of liabilities of this kind.
 
 
 5
 The Milwaukee is no longer responsible for liabilities arising out of its former rail operations, except for liabilities expressly preserved by the asset purchase agreement and orders of the district court. The Soo got the whole contract between the Milwaukee and the Escanaba, including, as we held before, trackage rights, a right of first refusal, and an arbitration clause. The Milwaukee therefore need not arbitrate with the Escanaba. The Soo has whatever liabilities the Milwaukee shucked, and the duty to arbitrate is in the contract creating these liabilities. The Escanaba has made a request for arbitration against the Soo. We need not decide what the Soo's liabilities to the Escanaba are, if the Soo has any. We hold only that when the Milwaukee sold its rail assets to the Soo, it transferred the rail liabilities and the duty to arbitrate as well.
 
 
 6
 REVERSED.