ELZINGA & VOLKERS, INC., Plaintiff,

v.

LSSC CORP. and Leggett & Platt, Inc., Defendants.

No. 1:93CV294.

United States District Court, N.D. Indiana, Fort Wayne Division.

May 16, 1994.

Dane L. Tubergen, Hunt Suedhoff Borror and Eilbacher, Fort Wayne, IN, Larry A. Hanson, Moore Costello and Hart, St. Paul, MN, for plaintiff.

R. Frederick Walters, Karen D. Wedel, Kansas City, MO, Frank J. Gray, Beckman Lawson Sandler Snyder and Federoff, Fort Wayne, IN, for defendants.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on Elzinga & Volkers' Motion for Summary Judgment to enjoin arbitration proceedings initiated by defendants and on defendants LSSC Corporation and Leggett & Platt's Motion to Compel Arbitration. In July, 1993 the defendants initiated arbitration proceedings against the plaintiffs. On December 8, 1993, this court denied the plaintiff's motion for preliminary injunction 838 F.Supp. 1306. Thereafter, on February 4, 1994, plaintiff filed a motion for summary judgment to enjoin arbitration proceedings. A hearing was held in this court on April 1, 1994 on the summary judgment motion and the motion to compel arbitration. For the following reasons, the plaintiff's motion for summary judgment to enjoin arbitration is DENIED in part and GRANTED in part. The defendants' motion to compel arbitration is DENIED.

### Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the

moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* 477 U.S. at 252, 106 S.Ct. at 2512; *In Re Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any," which demonstrate the absence of a genuine issue of material fact, *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt,* 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.,* 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson,* 477 U.S. at 249–251, 106 S.Ct. at 2511. However, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Nat'l Bank,* 704 F.2d 361, 367 (7th Cir.1983).

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.,* 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–252, 106 S.Ct. at 2512.

*Standard to Compel Arbitration*

Directly mirroring the plaintiff's summary judgment motion to enjoin arbitration is the defendants' request for an order compelling arbitration. The Federal Arbitration Act, 9 U.S.C. § 4, provides that a party aggrieved by the failure of another to arbitrate under a written agreement for arbitration may petition a district court for an order compelling arbitration under the agreement. In considering the motion to compel arbitration the court is to decide two limited issues: 1) does

a valid agreement to arbitrate exist between the parties, and 2) does the agreement to arbitrate cover the underlying dispute. *See AT & T Technologies, Inc. v. Communication Workers of America,* 475 U.S. 643, 648–650, 106 S.Ct. 1415, 1418–1419, 89 L.Ed.2d 648 (1986); *S+L+H S.P.A. v. Miller–St. Nazianz, Inc.,* 988 F.2d 1518, 1523 (7th Cir. 1993); *Chicago Typographical Union v. Chicago Sun–Times,* 860 F.2d 1420, 1423 (7th Cir.1988). Once a court answers these questions in the affirmative, the parties must take up all additional concerns with the arbitrator.

## FACTUAL BACKGROUND

Elzinga & Volkers, Inc. ("E & V") entered into a contract with No–Sag Products to construct a factory for No–Sag in Kendallville, Indiana ("E & V contract"). Under the contract, E & V's responsibilities included acting as the general contractor for the construction of the factory. E & V obtained bids from subcontractors for the required work and No–Sag and E & V decided which bids to accept. Under the terms of the contract, No–Sag assumed the risk of defective work by the subcontractors, if not due to the fault of E & V and if these amounts were not recoverable from the subcontractor. *See* Standard Form of Agreement Between Owner and Contractor ("Standard Contract") Article 7.2.4. The contract also contained an arbitration clause which read as follows:

> Any controversy or claim arising out of or related to the Contract, or breach thereof, shall be settled by arbitration in accordance with the construction industry Arbitration Rule of the American Arbitration Association, and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof, except controversies or Claims relating to aesthetic effect and except those waived as provided for in Subparagraph 4.3.5. Such controversies or Claims upon which the Architect has given notice and rendered a decision as provided in Subparagraph 4.4.4 shall be subject to arbitration upon written demand of either party. Arbitration may be commenced when 45 days have passed after a claim has been referred to the Architect as pro-

vided in paragraph 4.3 and no decision has been rendered.

Standard Contract, Article 4.51. The factory was completed on September 1, 1988.

In June 1989, No–Sag merged with Lear Siegler Seymour Corporation. In 1993 the corporation's name was changed to LSSC Corporation ("LSSC"). In June 1990, LSSC (formerly No–Sag) sold all of its right, title and interest in its assets of the No–Sag Division, including the Kendallville factory, to Leggett & Platt ("L & P"). The new owners advised E & V of the sale.

Problems with the construction of the Kendallville factory arose in 1989. LSSC, and later L & P, communicated with E & V about the problems. In a letter dated March 4, 1991, E & V was advised that L & P, the new owners of the factory, would now be pursuing resolution of the construction problems. Negotiations continued between L & P and E & V regarding the various construction problems. E & V resolved a minor problem with the loading dock in 1992, although in its communications it contested L & P's authority to pursue defect claims with E & V.

On March 2, 1993 E & V was asked to consent to the assignment of the No–Sag construction contract to L & P. E & V did not consent. On July 28, 1993, defendants LSSC and L & P mailed E & V a "Demand for Arbitration". The claim in arbitration, which was instituted by both defendants as claimants, asserts that the subcontractors did not properly construct the factory. Also on July 28, 1993, defendants filed suit in state court against the subcontractors.

### Obligation to Arbitrate

E & V does not dispute that it agreed to arbitrate all claims related to the E & V construction contract with No–Sag. However, E & V argues that it has not agreed to arbitrate claims with LSSC or Leggett & Platt.

### LSSC's Right to Arbitrate

Originally, in its initial filings on the preliminary injunction motion, E & V argued that LSSC was not entitled to bring an arbitration claim because it was a separate entity

from No–Sag, the party with whom E & V initially agreed to arbitrate. In response, the defendants submitted the affidavit of James F. Matthews, corporate counsel for LSSC, who stated that No–Sag Products merged in 1989 with Lear Siegler Seymour Corporation, who eventually changed its name to LSSC Corporation.

Subsequently, in its briefing on the summary judgment motion now under consideration, E & V did not contest that an agreement to arbitrate exists between it and LSSC.[1] The only argument forwarded by E & V in support of enjoining arbitration by LSSC relates to LSSC's alleged lack of a damage claim against E & V. Moreover, during the hearing on April 1, counsel for E & V conceded that LSSC has an agreement with E & V to arbitrate.[2] Based on the foregoing, the court finds LSSC is the same corporation as No–Sag and is the same party that contracted with E & V. Therefore, E & V does have an agreement to arbitrate with LSSC and this court will not enjoin LSSC from proceeding with arbitration against E & V.

■ Next, E & V argues LSSC has no claim against E & V because LSSC has sold the factory and sustained no loss in the sale due to the allegedly defective condition of the factory. E & V argues that because LSSC currently has no ownership interest in the factory it has no claim for damages. In addition, E & V points out that LSSC sold the property "as is" so is not liable to L & P for defects. E & V has submitted the deposition of Mr. Matthews, LSSC's president and corporate counsel, who stated that LSSC is not liable to L & P for defects in the No–Sag facility and has no damages in that respect.

■ The court finds, although E & V's argument is relevant to the ultimate damages issue to be decided by the arbitrator, E & V's argument goes to the merits of LSSC's claim for damages and is a question solely for the arbitrator, not the court. The court's inquiry, as stated previously, is limited to two specific issues: 1) does a valid agreement to arbitrate exist between the parties, and 2) does the agreement to arbitrate cover the underlying dispute. *See AT & T Technologies, Inc. v. Communication Workers of America,* 475 U.S. at 648–650, 106 S.Ct. at 1418–1419. Once the court determines the underlying dispute is within the ambit of a valid arbitration clause, issues regarding the merits of the underlying claim are for the arbitrator. *Flender Corp. v. Techna–Quip Co.,* 953 F.2d 273, 275 (7th Cir.1992). In deciding whether a particular controversy is within the scope of an arbitration clause, it is not the function of the court to determine the tenability or merit of the claims presented; rather, if the issues presented, here the defects in construction of the factory, are on their face referable to arbitration, the inquiry of the court is at an end. *Warren Bros. v. Cardi Corp.,* 471 F.2d 1304, 1309 (1st Cir. 1973).

■ Moreover, even though one has assigned the right to damages, where there is a specific written agreement to arbitrate, the original party may compel arbitration. *Vainqueur Corp. v. Lamborn & Co.,* 305 F.Supp. 1007, 1008 (S.D.N.Y.1969). Therefore, because the court has determined, and the parties do not dispute, that an agreement to arbitrate exists between LSSC and E & V regarding construction disputes, the argument that LSSC has no damage claim against E & V is irrelevant to the court's determination regarding enjoining or compelling arbitration and must be referred to the arbitrator.

■ Based on this conclusion, the court will deny E & V's motion for summary judgment to enjoin LSSC from proceeding with its claim in arbitration. However, with respect to the motion to compel arbitration, E & V has raised the requirement of the Fed-

1. The court notes, at the hearing on the preliminary injunction motion on November 29, 1993, E & V indicated that it had abandoned the argument that LSSC does not have the right to institute an arbitration proceeding; their only basis for requesting the injunction against LSSC is the lack of damages.

2. Counsel for E & V, Mr. Hansen, stated "They say LSSC Corp. has an agreement to arbitrate as the successor to No–Sag. We agree ..."

eral Arbitration Act that in order to institute a motion to compel, a party must be "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate". Title 9 U.S.C. § 4. E & V argues that it has not refused to arbitrate, and therefore, need not be compelled to do so.

The court finds E & V's argument well-taken. The law is clear that a "party aggrieved" may compel arbitration only where the other party refuses to participate in arbitration proceedings. *Food Handlers Local v. Pluss Poultry, Inc.*, 260 F.2d 835, 838 (8th Cir.1958); *Merrill Lynch, Pierce, Fenner & Smith v. King*, 812 F.Supp. 1217, 1218 (M.D.Fl.1993), *affirmed*, 3 F.3d 443 (11th Cir.1993); *and Avant Petroleum, Inc. v. Pecten Arabian Ltd.*, 696 F.Supp. 42, 44 (S.D.N.Y.1988). Neither LSSC nor L & P has presented evidence, other than the persistence of E & V in attempting to enjoin arbitration proceedings, that E & V has resisted or refused to arbitrate. Based on this narrow technical point, the court will deny LSSC's motion to compel arbitration, even though the court has found that LSSC has a right to proceed in arbitration. The court cautions the parties that its denial of LSSC's motion to compel is based solely on E & V's representations that it is participating in the arbitration process.

### L & P's Right to Arbitrate

■ With respect to its motion to enjoin L & P, E & V argues that L & P may not institute arbitration proceedings because L & P has no agreement with E & V to arbitrate. In response, L & P argues that LSSC assigned the E & V construction contract to L & P as part of the sale of the No–Sag Division and by the assignment, L & P acquired the contract which includes the right to arbitration.

The validity of the assignment between LSSC and L & P goes to the existence of a contract to arbitrate, and therefore, must be determined by the court. As the court stated previously, the issue of arbitrability is "undeniably an issue for judicial determination". *Local 103 v. Indiana Constr. Corp.*, 706 F.Supp. 667, 672 (N.D.Ind.1989) (citing *AT & T Technologies Inc.*, 475 U.S. 643, 106

S.Ct. 1415, 89 L.Ed.2d 648 (1986)). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit". *Id.* (citing *Steelworkers v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)).

### Assignment of the E & V Contract

E & V argues that LSSC did not assign the E & V contract as part of the sale of the No–Sag business to L & P. E & V contends the E & V contract was not assigned to L & P because the assignment is not "spelled out" in the No–Sag sale documents and no other agreements exist between LSSC and L & P other than the sales documents. E & V refers to Paragraph 1.02 of the Purchase Agreement between LSSC and L & P which states as follows:

> On the closing date, on the terms and subject to the conditions set forth in this Agreement, Seller shall sell, convey, transfer, assign and deliver to Buyer, and Buyer shall purchase and acquire from Seller, all of Seller's rights, title and interest in and to the assets, properties and business of Seller as the same may exist at the close of business on the Closing Date, whether tangible or intangible which are used primarily (except as specifically provided below) in connection with the conduct of the business of the division (collectively, 'the Assets'), including, without limitation, the following:
>
> \*     \*     \*     \*     \*     \*
>
> (e) Subject to section 9.06, all of Seller's rights (to the extent assignable) under the commitments (as defined in Section 2.07) pertaining primarily to the conduct of the business of the Division, including, but not limited to, any contracts for the purchase of raw materials, contracts for services and supplies, . . .

Referring to paragraph (e), E & V argues that the contracts to be assigned were those "commitments" stated in Section 2.07, which defines commitments as "each contract, agreement or understanding, whether written or oral, which the parties had identified

in the disclosure statement." The disclosure statement has not been produced. E & V contends "it is obvious that the disclosure statement would not have included the [E & V] contract", apparently because if the disclosure statement had included the E & V contract, the defendants would have produced it. E & V maintains that LSSC transferred executory contracts which pertained to the ongoing conduct of the business, necessarily excluding the E & V contract which had been completed nearly two years prior to the sale to L & P. Because the assignment was not specifically or implicitly "spelled out" in the documents, E & V argues "there is no indication that an attempt was made to assign [the E & V] contract."

As further support that LSSC did not assign the claim for defects and arbitration under the E & V contract, E & V points out that L & P bought the No–Sag factory "as is" from LSSC. Because L & P accepted the factory with the defects, E & V argues that if the parties had intended to assign the right to recover for the defects, the assignment would have been discussed and ultimately expressed in the No–Sag sale documents. E & V points to Matthews' deposition wherein he states that the factory defects were "not even a subject of importance at the time of the sale." E & V asserts that the sales documents were drafted by attorneys and detailed all aspects of this sophisticated transaction, but did not mention the assignment of a right to a cause of action on a completed contract. E & V argues that the assignment was not intended at the time of the sale, but was merely an afterthought, as evidenced by the parties' later request to E & V to consent to the assignment.

In response, the defendants argue that the E & V construction contract was assigned to L & P, as supported by excerpts of the sale agreement submitted by the defendants. LSSC and L & P maintain that the assignment transaction contemplated that L & P would pursue claims relating to the defective construction of the factory. The defendants assert that the assignment was not effectuated by section 1.02(e) because that section refers only to assignments of executory contracts. LSSC and L & P rely on the general assignment provision of section 1.02 as effectuating the assignment because they contend the right to sue for non-performance is a right and interest in an asset transferred, to wit the No–Sag factory. In addition, the defendants submitted the "Assignment and Bill of Sale" ("Bill of Sale") which was executed pursuant to the Purchase Agreement between LSSC and L & P. The Bill of Sale contains a paragraph virtually identical to Paragraph 1.02 of the Purchase Agreement and also lists, in general terms, the subject matter of the sale and assignment and includes inventory, insurance policies and commitments to suppliers. Furthermore, the defendants argue that E & V places undue emphasis on Matthews' deposition wherein he stated that factory defects were not a significant item in the transaction. The defendants contend that because the defects were not a significant item does not mean the right to a cause of action based on the defects was not included in the transaction.

The parties agree that the facts underlying the current motions are not in dispute. The only issue for the court is the legal effect of the transaction between LSSC and L & P with respect to the E & V construction contract and the arbitration clause contained therein. The court must determine if the parties assigned the right to damages and the accompanying arbitration clause of the E & V contract in the sale of the No–Sag division. The evidence consists of the sales documents and the deposition testimony of a LSSC corporate officer.

■ A contract must be construed to give effect to the intent of the parties as indicated by the language of the contract. *Curry Road Ltd. v. K Mart Corp.*, 893 F.2d 509, 511 (2nd Cir.1990) (citations omitted). A court should accord the language in the contract its plain meaning giving due consideration to "the surrounding circumstances [and] apparent purpose which the parties sought to accomplish." *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2nd Cir.1990) (citing *William C. Atwater & Co. v. Panama R.R. Co.*, 246 N.Y. 519, 159 N.E. 418 (1927)).

**688**

Moreover, under New York law[3] no particular words or phrases are necessary to effect assignment; a valid assignment merely requires a completed transfer of the interest of the assignor. *Caribe Carriers, Ltd. v. C.E. Heath & Co.*, 784 F.Supp. 1119, 1126 (S.D.N.Y.1992). The issue for the court is whether the contract for the sale of the No–Sag division assigned the interest of LSSC in the E & V construction contract. The court finds that the unambiguous language of the sales documents does not assign the E & V contract.

First, the sales documents extensively detail all the specific terms of the sales transaction between LSSC and L & P. The "Agreement of Purchase and Sale" is sixty-one (61) pages in length. The contract attempts to specify every detail of the sale. However, nowhere does the sixty-one page agreement discuss the completed E & V contract or its attendant remaining cause of action and right to arbitration. In determining the parties' intentions the court may consider the absence of a provision in the contract as evidence of an intention to exclude the provision. *Domeyer v. O'Connell*, 364 Ill. 467, 4 N.E.2d 830 (1936). L & P contends the assignment of the E & V construction contract was effectuated, not in a particular section specifically identifying the assignment of a cause of action, but rather in the general language of section 1.02. Reading the contract as a whole, the court finds the construction offered by L & P is not tenable, based on the contract's detail in every other aspect of the transaction.

Moreover, in construing and enforcing a contract, the court may not supply provisions to the contract actually lacking or impose obligations not actually assumed by the contracting parties. *Bottitta v. Bottitta*, 194 A.D.2d 510, 598 N.Y.S.2d 304 (1993). The law will not insert terms into a contract not clearly intended by the parties. *Id.* In this case, LSSC clearly documented its desire and intent with respect to every other aspect of the sale to L & P, but not the assignment of the E & V contract. Language assigning

the E & V contract is lacking from the sales documents.

Furthermore, the "as is, where is" language relating to the condition of the factory supports the court's conclusion that the right to damages was not assigned. The parties clearly documented their intention that the factory was being sold with the defects and that L & P could not hold LSSC liable for the defects. Based on this intention, if the parties had also intended to assign the right to hold E & V liable for the defects, a reasonable business person would expect that the intent to assign this remedy would have been documented. Accordingly, the court finds the transaction between L & P and LSSC was a sale of the assets of the No–Sag Division which did not include assignment of the E & V construction contract because of the language of the Purchase Agreement and Bill of Sale between LSSC and L & P. Therefore, LSSC did not assign the E & V contract to L & P, and L & P has not acquired the right to compel E & V to arbitrate. Based on the foregoing the court will grant E & V's motion for summary judgment to enjoin L & P from arbitration and will deny L & P's motion to compel arbitration.

*Non–Assignment Clause*

■ The parties have raised an issue regarding an alleged non-assignment clause in the E & V contract. Assuming arguendo that the transaction between LSSC and L & P had effectuated an assignment of the E & V contract, E & V argues the assignment was not valid because the contract terms barred assignment. E & V contends that LSSC could not assign its rights under the construction contract to L & P because the non-assignment clause barred assignment without its consent. Under the terms of the non-assignment clause, E & V asserts that LSSC could not assign the contract without first obtaining E & V's consent. Because E & V refused to consent to the assignment, E & V maintains that the assignment is ineffective, and therefore, L & P has no agreement to arbitrate with E & V and may not proper-

**3.** New York law applies to the interpretation of the Purchase Agreement and Bill of Sale because the documents so provide. *See* Paragraph 11.12 of the Purchase Agreement and paragraph 3 of the Bill of Sale.

ly institute an arbitration proceeding against E & V. In support of its position, E & V cites the Restatement (Second) of Contracts, § 317(2)(c), which states that a contract may be assigned unless assignment is precluded by the contract.

In response, the defendants argue that the alleged "non-assignment" clause actually contemplates that the contractor binds himself to the owner and the owner's successor, assigns and legal representatives. The clause reads as follows:

> The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Contract Documents. Neither party to the contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

AIA General Conditions, par. 13.2.1.

Based on the plain language of the clause, the defendants claim that the parties to the original contract understood that each would be bound to the assigns of the other citing *Crown Oil v. Glen Construction*, 320 Md. 546, 578 A.2d 1184 (1990), and *Village of Westville v. Loitz Brothers Constr. Co.*, 165 Ill.App.3d 338, 116 Ill.Dec. 447, 519 N.E.2d 37 (1988). In addition, the defendants contend that LSSC did not assign the "whole contract", as prohibited by the clause, but merely assigned the right to sue for damages; as such, the defendants argue that the partial assignment is not barred by the anti-assignment clause, citing *Charles L. Bowman & Co. v. Erwin*, 468 F.2d 1293, 1297 (5th Cir.1972); and *Trubowitch v. Riverbank Canning Co.*, 30 Cal.2d 335, 182 P.2d 182, 185 (1947).

Finally, the defendants rely on *Crown Oil* in which the court analyzed the effect of an equitable assignment on an arbitration clause in a contract that contained a similar non-assignment provision. 578 A.2d at 1192–94.

The court said the equitable assignment to the successor was valid because the other party to the contract would suffer no detriment by the assignment. The court noted that no novation had occurred and therefore the assignor would remain liable to the other party for obligations under the contract. *Id.* at 1193. Therefore, the defendants maintain that the assignment to L & P was not barred by the non-assignment clause and L & P may now properly institute arbitration against E & V.

■ First, the court notes that the meaning of a prohibition on assignment is a matter of interpretation for the court. *Trubowitch* at 188. In addition, because the clause is a restriction on alienation, it must be strictly construed against the party urging the restriction. *First Bank & Trust v. Novak*, 12 Kan.App.2d 407, 747 P.2d 850, 855 (1987). As this court stated in the previous order denying the preliminary injunction, the non-assignment provision appears internally inconsistent: in the first sentence it states that each party is bound to the assigns of the other while in the next sentence it states that neither party may assign the contract without the consent of the other. However, consent is required only where "the contract *as a whole*" is assigned. Reading the two sentences together in order to give meaning to both leads to the interpretation that each party will be bound to the other's assignee for a partial assignment, even where consent is not given.

■ Next, case law of most states is in accord that a prohibition on assignment does not prohibit assignment of claims for money damages for nonperformance. *Trubowitch* 182 P.2d at 188 (citing 2 Williston, Contracts, Rev.Ed. 1217 and collecting cases); *Village of Westville*, 519 N.E.2d at 39 (Ill.App.1988); *Mears Park Holding Corp. v. Morse/Diesel, Inc.*, 427 N.W.2d 281, 283 (Minn.App.1988); *Ford v. Robertson*, 739 S.W.2d 3, 5 (Tenn. App.1987) (stating that the law distinguishes between the right to assign performance and the right to assign damages for breach); *Grady v. Commers Interiors, Inc.*, 268 N.W.2d 823, 824 (S.D.1978) (citing *Trubowitch* and 6A C.J.S. Assignments). In the

**690**

present situation, all the work had been performed and the money paid under the contract at the time of the assignment. The only right remaining under the E & V construction contract was the right to sue for nonperformance or breach. Therefore, this was the only right that would be assigned to L & P and as such the partial assignment would not be barred by the non-assignment clause.

Finally, E & V contends that an arbitration clause should be construed as personal, and therefore, nonassignable without consent, especially in light of the constitutional and procedural rights one waives when agreeing to arbitrate. In support of this contention, E & V has cited a number of cases wherein successor entities were allowed to enforce arbitration agreements entered into by their predecessors. *See Flender Corp. v. Techna–Quip Co.*, 953 F.2d 273 (7th Cir.1992); *Crown Oil*, 578 A.2d 1184, 1194 (Md.1990); *Ruberoid Co. v. Glassman Constr. Co.*, 248 Md. 97, 234 A.2d 875 (1967); *and Trubowitch v. Riverbank Canning Co.*, 182 P.2d 182 (Cal.1947). E & V maintains these cases establish that arbitration clauses are transferable only where there has been a simple change in the form of the business entity and are not freely assignable to non-successor parties, especially where the contract contains a non-assignment clause.

The court agrees that a party gives up many rights when agreeing to arbitrate. However, one purpose of the Federal Arbitration Act is to require courts to enforce arbitration agreements and to place these agreements on the same footing as other contracts. *Volt Information Sciences, Inc. v. Bd. of Trustees of Stanford Univ.*, 489 U.S. 468, 474–75, 109 S.Ct. 1248, 1253, 103 L.Ed.2d 488 (1989) (citations omitted). In addition, courts have held that an obligation to arbitrate is not necessarily limited only to those who personally signed the agreement; ordinary contract principles determine who is bound. *A/S Custodia v. Lessin Intern., Inc.*, 503 F.2d 318, 320 (2d Cir.1974). Therefore, E & V's argument that, in general, arbitration clauses are not assignable has not been established by the caselaw. *See, e.g., Asset Allocation & Mgmt. Co. v. Western Employ-*ers Ins. Co., 892 F.2d 566, 574 (7th Cir.1989); *I.S. Joseph Co., Inc. v. Michigan Sugar Co.*, 803 F.2d 396 (8th Cir.1986); *Matter of Chicago, Milwaukee, St. Paul and Pacific Railroad*, 789 F.2d 1281 (7th Cir.1986); *and Chatham Shipping Co. v. Fertex S.S. Corp.*, 352 F.2d 291 (2d Cir.1965). Therefore, the court rejects the plaintiff's argument that, in general, arbitration clauses are nonassignable.

### Conclusion

For the foregoing reasons, the plaintiff Elzinga & Volkers' Summary Judgment Motion to enjoin LSSC Corp. from proceeding in arbitration is DENIED. The plaintiff's Summary Judgment Motion to enjoin Leggett & Platt from proceeding in arbitration is GRANTED. Furthermore, defendants LSSC Corp. and Leggett & Platt's Motion to Compel Arbitration is DENIED.