### INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 103, Plaintiff,

v.

### INDIANA CONSTRUCTION CORP., Defendant.

### Civ. No. F 88–164.

United States District Court, N.D. Indiana, Fort Wayne Division.

Feb. 14, 1989.

---

William R. Groth, Fillenwarth, Dennerline, Groth & Baird, Indianapolis, Ind. and Stephen J. Lerch, Levine & Lerch, Fort Wayne, Ind., for plaintiff.

William T. Hopkins, Jr. and M. Scott Hall, Gallucci, Hopkins & Theisen, P.C., Fort Wayne, Ind., for defendant.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on plaintiff's motion for summary judgment to compel arbitration and defendant's motion to dismiss, or in the alternative, for summary judgment. Both motions have been fully briefed. For the following reasons,

plaintiff's motion will be denied and defendant's motion will be granted.

## Summary Judgment

█ Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* 106 S.Ct. at 2512; *Valentine v. Joliet Tp. High School Dist. No. 204*, 802 F.2d 981, 986 (7th Cir.1986).

█ Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact. *Celotex*, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 106 S.Ct. at 2511.

█ Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 106 S.Ct. at 2512.

## Factual Background

The facts presented by the parties are as follows. In April, 1988, the defendant, Indiana Construction Corp. (Indiana Construction), was engaged as the general contractor on the Toys "R" Us store project located at the Glenbrook Commons in Fort Wayne, Indiana. At all times relevant hereto, Indiana Construction was signatory to a collective bargaining agreement with the plaintiff, the International Union of Operating Engineers, Local 103 (Operators Union), and the Laborers International Union, Local 213 (Laborers Union) through the Building Contractors Association of Fort Wayne, Inc.

Indiana Construction's collective bargaining agreement with the Operators Union provides for mandatory arbitration in the standard broad language found in most

labor agreements.[1] However, there is an explicit exclusion, "that the arbitration provisions of this contract shall not apply in any way to any dispute arising between the Union, or Unions, involving territorial or craft jurisdiction."

The agreement also expressly provides an alternative dispute resolution procedure for the excluded jurisdictional disputes [2] and includes a subcontracting clause which limits Indiana Construction's ability to subcontract work covered by the agreement to employees who are being paid in accordance with the agreement.[3]

Indiana Construction's collective bargaining agreement with the Laborers Union also contains broad provisions for mandatory arbitration with a specific exclusion of jurisdictional disputes,[4] a similar alternative dispute resolution procedure for jurisdictional disputes,[5] and a subcontracting

clause which in effect is the same as the Operator's.[6]

As the general contractor on the Toys "R" Us project, Indiana Construction subcontracted certain masonry work to L. Byerly Masonry (Byerly). Byerly had no collective bargaining agreement with the Operators Union but was signatory to a collective bargaining agreement with the Laborers Union. The forklift work at the job site was claimed by the Laborers Union as its own and was performed by one of its members. However, in its complaint, the Operators Union claimed that operation of the forklift was covered by its labor agreement with Indiana Construction.

According to Indiana Construction, on April 25, 1988, Michael Wall (Wall), a business agent for the Operators Union, approached Robert Bishop (Bishop) and Timothy Momper (Momper), project supervisor for Indiana Construction, at the Toys "R"

---

1. Subpart 3 of Article 6 of the collective bargaining agreement provides in pertinent part:
   3. Should any dispute arise between the Union, or any employee covered by this Agreement, and the Employer concerning the interpretation or application of the terms of this contract the same shall be submitted to a joint arbitration board consisting of four (4) members, two (2) of whom shall be selected by the Union and two (2) of whom shall be selected by the Employer. Provided, however, that the arbitration provisions of this contract shall not apply in any way to any dispute arising between the Union, or Unions, involving territorial or craft jurisdiction.

2. Article 7 of the collective bargaining agreement provides:

   Article 7
   Jurisdictional Dispute
   1. The parties to this Agreement are subject to and agree to be bound by all decisions, awards and provisions of the Impartial Jurisdictional Disputes Boards, or its successor that is acceptable to the Building and Construction Trades Department of the AFL/CIO and the International Union of Operating Engineers, the Associated General Contractors of America, and parties to this agreement. There is to be no work stoppage by either party while an award is pending.

3. Subpart 3 of Article 15 of the collective bargaining agreement provides in pertinent part:
   3. The Employer agrees not to sub-contract or sublet any on-site work covered by this Agreement to any person, firm or corporation which does not pay at least the minimum rates of pay and abides by all appren-

ticeship standards as set forth in this Agreement together with fringes established herein.

4. Article XXII of this collective bargaining agreement provides in pertinent part:
   It is agreed by the Parties that all grievances, disputes, or claims, (except jurisdictional disputes, wage rates, fringe benefits and dues check-off) which may arise with respect to the enforcement or interpretation of any of the terms of this Agreement are to be resolved in the following manner:
   *   *   *   *   *   *
   (4) In the event that the dispute is not settled, either party may, through written notice to the other party, submit the grievances or dispute to final and binding arbitration.

5. Article I of this agreement provides in part:
   Should jurisdictional disputes or differences arise with other Parties which endanger the continuous progress of a project which cannot be settled at the local level, the Employer shall make a written work assignment in accordance with area practice related to the specific project only and work shall continue in accordance with the assignment by the Employer until representatives of the International Unions of all disputing Trades meet and bring about, or cause to bring about, a satisfactory or mutual understanding with the Employer.

6. Article XXI provides:
   All job site work covered by this Agreement shall be sublet same subject to the terms of this Agreement.

Us project site and demanded that Indiana Construction assign members of the Operators Union to the forklift work which was then being performed by Byerly's employees who were members of the Laborers Union. Wall further indicated that pickets would be put up the next day at the job site should the work not be assigned as he directed. Indiana Construction submits the affidavits of Bishop and Momper which assert that such statements were in fact made.

Byerly's owner, who was informed of Wall's demands that same day, had Byerly's legal counsel send a letter to the Operators Union informing it that members of the Laborers Union had historically been assigned to do the forklift work. The letter further threatened legal action should the Operators Union engage in any illegal activities at the project site.

No pickets were placed at the job site on April 26, 1988, and on April 27, 1988, a meeting was held to discuss the dispute. Wall and the Operators Union business manager, Don Smart (Smart), met with James Schellenberger and Jerry Huguenard of Indiana Construction. According to the affidavits of Schellenberger and Huguenard, Smart requested that Indiana Construction assign the forklift work to a member of the Operators Union. Smart also claimed that subcontracting the forklift work to Byerly violated the subcontracting clause of the labor agreement.

The Operators Union, while not contesting the fact that the foregoing confrontations took place, strenuously denies having threatened to place pickets and having requested that the forklift work be assigned to its members. The affidavit of Wall specifically denies ever having threatened to picket the Toys "R" Us job site if Byerly did not put a member of the Operators union on the forklift. The affidavit of Smart not only specifically denies requesting the forklift work for his union members, but also states that he "advised Schellenberger and Huguenard that Local 103

was not asking Indiana Construction to put an operator on the forklift."

In May, 1988, Schellenberger received an undated letter from Smart which demanded that payments be made to the fringe benefit funds of the Operators Union for all hours worked or paid that the forklift had been or was to be operated in the future at the Toys "R" Us project site. Along with the demand, the letter alleged that Indiana Construction had breached the subcontracting clause of the collective bargaining agreement and demanded arbitration of the dispute.

Indiana Construction refused to arbitrate the dispute, claiming that it was a work assignment dispute excluded from the arbitration provision as "invovling territorial or craft jurisdiction." On June 21, 1988, the Operators Union filed suit in this court under 29 U.S.C. § 185 to compel arbitration with Indiana Construction. In its complaint, the Operators Union claims that the grievance does not involve a jurisdictional claim, but rather, is a contractual claim to have the forklift work performed by employees paid according to the labor agreement with Indiana Construction. The Operators Union further claims that its grievance does not seek replacement of the Laborers Union members with Operators Union members on the forklift work. The relief sought by the Operators Union includes an order compelling arbitration of the grievance, judgment for damages of $50,000 caused by the unremedied breach and attorney fees and costs.

### Analysis

The sole issue for determination by this court on the cross-motions for summary judgment[7] is whether or not the parties intended their collective bargaining agreement to require arbitration of the union's grievance over work subcontracted out to laborers covered by a different labor agreement with the defendant employer.

---

7. This court will examine the documents and materials outside of the pleadings presented by the parties in making the factual determination of whether this dispute is jurisdictional or contractual. Therefore, pursuant to Federal Rule of Civil Procedure 12(b), defendant's motion to dismiss will be treated as a motion for summary judgment.

■ "[T]he question of arbitrability—whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). In making its determination, the court is to apply the principles set forth in the *Steelworkers Trilogy*[8] and subsequent cases. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). "The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546–47, 84 S.Ct. 909, 912–13, 11 L.Ed.2d 898 (1964). However, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT & T Technologies*, 475 U.S. at 649, 106 S.Ct. at 1419.

■ Where there is an arbitration clause in the contract, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Id.* Where the arbitration clause is broad, providing for arbitration of any differences arising from interpretation of the contract, only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail. *Id.* However, this presumption applies only "[i]n the absence of any express provision excluding a particular grievance from arbitration." *Id.* (*quoting*

*Warrior & Gulf, supra,* 363 U.S. at 584–85, 80 S.Ct. at 1354).

Applying the above principles of law, it is clear that plaintiff's reliance on the presumption of arbitrability is misplaced. Although there is the broadest of arbitration clauses in the Operators Union collective bargaining agreement, it also expressly excludes "any dispute arising between the Union, or Unions, involving territorial or craft jurisdiction." Therefore, the law dictates that this court *must* compel arbitration over any disputes arising under the contract except for jurisdictional disputes, but this court *cannot* compel arbitration of jurisdictional disputes. Thus, disposition of the summary judgment motions turns on whether the dispute over the forklift work is jurisdictional or not; an issue which entails a mixed question of law and fact.

■ The Operators Union contends that since the allegation on the face of the complaint recites only a breach of the subcontracting clause, this court should look no further in determining that the dispute is not jurisdictional. First, plaintiff argues that to probe beyond the face of the complaint would involve this court in an impermissible resolution of the merits of the dispute. This argument over-simplifies the job of this court in determining the arbitrability issue. As the Supreme Court stated, "[i]t [is] for the court, not the arbitrator, to decide in the first instance whether the dispute was to be resolved through arbitration." *AT & T Technologies, supra,* 475 U.S. at 651, 106 S.Ct. at 1420. It is the responsibility of this court to look beyond the face of the complaint where plaintiff's characterization of the dispute is contested.

Secondly, plaintiff argues that pursuant to the Supreme Court decisions holding that doubts as to arbitrability should be resolved in favor of coverage, the standard this court should apply in determining the arbitrability issue is the same as the standard for dismissal. However, the precise issue with which this court is faced initially

---

**8.** The cases often referred to as the *Steelworkers Trilogy* include: *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Steelworkers v. Warrior & Gulf Naviga-* *tion Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

is whether the dispute is jurisdictional or not regardless of the fact that that determination necessarily disposes of the arbitrability issue. A review of several cases clearly shows that courts and arbitrators do not rely upon the characterizations of the disputes by the presenters. In *Hutter Construction Co. v. International Union of Operating Engineers, Local 139, AFL–CIO,* 862 F.2d 641 (7th Cir.1988), the court examined the propriety of the characterization of a grievance as nonjurisdictional by looking at the factual background of the dispute and the fairness of the characterization in light of the contract language of the collective bargaining agreement. Also, in *International Union of Operating Engineers, Local 103 v. Glenroy Construction Co.,* FMCS No. 85K/15268 (1986) (Doering, Arb.) and *International Union of Operating Engineers, Local 150 v. K.I.M.,* No. 51–30–0613–82–R (1983) (Goldberg, Arb.), the arbitrators determined that the grievances were in fact jurisdictional disputes despite the allegations of breach of the subcontracting clauses on the face of the grievances.

 The defendant contends that looking at the facts of this dispute, it is clear based on the analysis of the arbitrators in the Doering award and the Goldberg award, that this grievance is jurisdictional. This court agrees. Although there is a factual dispute as to whether the Operators Union claimed the forklift work for its members, there is no dispute about the fact that the union is claiming financial compensation for the forklift work assigned to the Laborers Union members. As Arbitrator Goldberg stated,

> The fact that the union is willing to accept financial compensation in lieu of work does not alter the fundamental nature of the union's claim. If the union had no legitimate claim to the work, it would have no legitimate claim to compensation for not being allowed to perform that work. Hence, by claiming compensation, it is effectively claiming the work. Thus there are two unions effectively claiming the work here at issue—Local 150 and Local 33. Hence, a jurisdictional dispute exists for purposes of Article XIII, Section 2.

Goldberg award at p. 8 (footnote omitted).

Similarly, in this case, by seeking financial compensation based on work performed by the Laborers Union, the Operators Union is claiming that same work as its own, thus creating a jurisdictional dispute. The parties have contractually agreed to have any jurisdictional disputes resolved by the Impartial Jurisdictional Disputes Board and not by arbitration.

### Conclusion

Based on the foregoing, plaintiff's motion for summary judgment is hereby DENIED. Defendant's motion for summary judgment is hereby GRANTED. Final judgment shall be entered in favor of the defendant, Indiana Construction Corp.