**ELZINGA & VOLKERS, INC., Plaintiff,**

v.

**LSSC CORP. and Leggett & Platt, Inc., Defendants.**

No. 1:93CV294.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Dec. 8, 1993.

Dane L. Tubergen, Hunt Suedhoff Borror and Eilbacher, Fort Wayne, IN, Larry A. Hanson, Moore Costello and Hart, St. Paul, MN, for plaintiff.

R. Frederick Walters, Karen D. Wedel, Kansas City, MO, Frank J. Gray, Beckman Lawson Sandler Snyder and Federoff, Fort Wayne, IN, for defendants.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on Elzinga & Volkers' Motion for Preliminary Injunction

to enjoin arbitration proceedings initiated by defendants and on defendants LSSC Corporation and Leggett & Platt's Motion to Compel Arbitration. In July, 1993 the defendants initiated arbitration proceedings against the plaintiffs. On October 29, 1993 the plaintiff filed a Motion for Temporary Restraining Order in the Noble Superior Court of Indiana. The Noble Superior Court granted the TRO on October 29, 1993 and set a hearing date for the preliminary injunction. On November 12, 1993 the case was removed from Noble County to this court. A hearing was held in this court on November 29, 1993 on the preliminary injunction and motion to compel arbitration. For the following reasons the plaintiff's motion for preliminary injunction is DENIED.

## FACTUAL BACKGROUND

Elzinga & Volkers, Inc. ("E & V") entered into a contract with No–Sag Products to construct a factory for No–Sag in Kendallville, Indiana. Under the contract, E & V's responsibilities included acting as the general contractor for the construction of the factory. E & V obtained bids from subcontractors for the required work and No–Sag and E & V decided which bids to accept. Under the terms of the contract, No–Sag assumed the risk of defective work by the subcontractors, if not due to the fault of E & V and if these amounts were not recoverable from the subcontractor. *See* Standard Form of Agreement Between Owner and Contractor ("Standard Contract") Article 7.2.4. The contract also contained an arbitration clause which read as follows:

> Any controversy or claim arising out of or related to the Contract, or breach thereof, shall be settled by arbitration in accordance with the construction industry Arbitration Rule of the American Arbitration Association, and judgment upon the award rendered by the arbitrator or arbitrators may be entered in any court having jurisdiction thereof, except controversies or Claims relating to aesthetic effect and except those waived as provided for in Subparagraph 4.3.5. Such controversies or Claims upon which the Architect has given notice and rendered a decision as provided in Subparagraph 4.4.4 shall be subject to

arbitration upon written demand of either party. Arbitration may be commenced when 45 days have passed after a claim has been referred to the Architect as provided in paragraph 4.3 and no decision has been rendered.

Standard Contract, Article 4.51. The factory was completed on September 1, 1988.

In June 1989, No–Sag merged with Lear Siegler Seymour Corporation. In 1993 the corporation's name was changed to LSSC Corporation ("LSSC"). In June 1990, LSSC (formerly No–Sag) sold all of its right, title and interest in its assets of the No–Sag Division, including the Kendallville factory, to Leggett & Platt ("L & P"). The new owners advised E & V of the sale.

Problems with the construction of the Kendallville factory arose in 1989. LSSC, and later L & P, communicated with E & V about the problems. In a letter dated March 4, 1991 E & V was advised that L & P, the new owners of the factory, would now be pursuing resolution of the construction problems. Negotiations continued between L & P and E & V regarding the various construction problems. E & V resolved a minor problem with the loading dock in 1992, although in its communications it contested L & P's authority to pursue defect claims with E & V.

On March 2, 1993 E & V was asked to consent to the assignment of the No–Sag construction contract to L & P. E & V did not consent. On July 28, 1993, defendants LSSC and L & P mailed E & V a "Demand for Arbitration". The claim in arbitration, which was instituted by both defendants as claimants, asserts that the subcontractors did not properly construct the factory. Also on July 28, 1993 defendants filed suit in state court against the subcontractors.

*Preliminary Injunction Standard*

The Seventh Circuit has outlined the actions that a district judge must take when considering a motion for preliminary injunction. *Darryl H. v. Coler,* 801 F.2d 893, 898 (7th Cir.1986).

(1) He must evaluate the traditional factors enumerated in the case law; wheth-

er there is an adequate remedy at law, a danger of irreparable harm, some likelihood of success on the merits. *See Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380, 386–88 (7th Cir.1984).

(2) He must make factual determinations on the basis of a fair interpretation of the evidence before the court.

(3) He must draw legal conclusions in accord with a principled application of the law.

*Id.* at 898. The court stated further that "the district court must somehow balance the nature and degree of the plaintiff's injury, the likelihood of prevailing at trial, the possible injury to the defendant if the injunction is granted, and the wild card is the public interest." *Id.* Additionally, "the statutory grant of the power to issue a preliminary injunction carries with it the power to issue whatever ancillary relief is necessary to the effective exercise of the granted power." *Federal Trade Commission v. Elders Grain, Inc.,* 868 F.2d 901, 907 (7th Cir.1989). Preliminary injunctions are an exercise of far-reaching power. *Lawson Products, Inc. v. Avnet, Inc.,* 782 F.2d 1429, 1433 (7th Cir.1986).

■ The Seventh Circuit has adopted a sliding scale approach in which the possibility of mistake in issuing the injunction would be minimized by weighing the costs of the injunctive relief against the benefits. This principle was stated in mathematical terms in *American Hospital Supply Corp. v. Hospital Products Limited,* 780 F.2d 589, 593 (7th Cir.1986). The preliminary injunction should be granted if, but only if:

$$P \times Hp > (1-P) \times Hd$$

The left side of the equation is the magnitude of erroneously denying the injunction, arrived at by multiplying the probability that the plaintiff will prevail at trial (P) by the harm to the plaintiff caused by the denial of the injunction (Hp). The right side represents the magnitude of an erroneously granted injunction measured by multiplying the probability that the defendant will prevail at trial (1–p) by the harm to the defendant caused by the granting of the motion (Hd). *Id.* at 593–94. This formula is not a substitute, but an aid to, judgment. *Lawson,* at

1434. The parties' briefs discuss the obligation to arbitrate which is the issue at the heart of "likelihood of success on the merits."

### Standard to Compel Arbitration

■ Directly mirroring E & V's request for a preliminary injunction enjoining arbitration is the defendants' request for an order compelling arbitration. The Federal Arbitration Act, 9 U.S.C. § 4, provides that a party aggrieved by the failure of another to arbitrate under a written agreement for arbitration may petition a district court for an order compelling arbitration under the agreement. In considering the motion to compel arbitration the court is to decide two limited issues: 1) does a valid agreement to arbitrate exist between the parties, and 2) does the agreement to arbitrate cover the underlying dispute. *See AT & T Technologies, Inc. v. Communication Workers of America,* 475 U.S. 643, 648–650, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986); *S + L + H S.P.A. v. Miller–St. Nazianz, Inc.,* 988 F.2d 1518, 1523 (7th Cir.1993); *Chicago Typographical Union v. Chicago Sun–Times,* 860 F.2d 1420, 1423 (7th Cir.1988). Once a court answers these questions in the affirmative, the parties must take up all additional concerns with the arbitrator.

### Obligation to Arbitrate

E & V does not dispute that it agreed to arbitrate all claims related to the construction contract with No–Sag. However E & V argues that it has not agreed to arbitrate claims with LSSC or Leggett & Platt.

### LSSC's Right to Arbitrate

■ Originally, E & V argued that LSSC is not entitled to bring an arbitration claim because it is a separate entity from No–Sag. In response the defendants submitted the affidavit of James F. Matthews, corporate counsel for LSSC. Mr. Matthews stated that No–Sag Products, which is named as the contracting party in the construction contract with E & V, merged in 1989 with Lear Siegler Seymour Corporation. The resulting company was called "Lear Siegler Commercial Products Corp.". Matthews further

states that on August 6, 1990 Lear Siegler Commercial Products amended its certificate of incorporation to change the name of the company back to Lear Siegler Seymour Corporation. Finally Matthews states that in 1993 the name of the corporation was changed to LSSC. LSSC is the same corporation, through merger and name change, as No–Sag and is the same party that contracted with E & V. Therefore E & V does have an agreement to arbitrate with LSSC and this court will compel E & V to arbitrate claims arising under the construction contract with LSSC.[1]

■ Next E & V argues that, even if it has agreed to arbitrate with LSSC, LSSC has "no standing" to bring a claim against E & V because LSSC has sold the factory. E & V argues that because LSSC has no ownership interest in the factory it has no claim for damages. In addition, E & V points out that LSSC sold the property "as is" so is not liable to L & P for defects and has no damages in that respect. The court finds that this argument goes to the merits of LSSC's claim for damages. Once the court determines that the underlying dispute is within the ambit of a valid arbitration clause, issues regarding the merits of the underlying claim or procedural arbitrability are for the arbitrator. *Flender Corp. v. Techna–Quip Co.,* 953 F.2d 273, 275 (7th Cir.1992). Therefore because this court has determined that an agreement to arbitrate exists between LSSC and E & V, the argument that LSSC has no damages or now lacks standing to continue in arbitration must be referred to the arbitrator.

### L & P's Right to Arbitrate

■ Next E & V argues that L & P may not institute arbitration proceedings because L & P has no agreement with E & V to arbitrate. In response L & P and LSSC argue that LSSC assigned the construction contract to L & P and by the assignment L & P acquired the contract which includes the right to arbitration.

In addition, the defendants initially argue that the assignability of the contract is not a proper issue for the court. The defendants argue that, when deciding whether to enjoin or compel arbitration, the only issue for the court to decide is whether a valid agreement was created that contained an arbitration clause covering the underlying dispute, citing *Goebel v. Blocks & Marbles Brand Toys,* 568 N.E.2d 552, 556 (Ind.App.1991). They contend that once the court determines that the subject matter of a dispute is within an arbitration clause, questions of procedural arbitrability, including the standing of a party to an arbitration, are matters for the arbitrator, not the court, to decide, citing *Chicago Typographical Union v. Sun–Times,* 860 F.2d 1420, 1424 (7th Cir.1988); *AT & T Technologies, Inc. v. Communication Workers of America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); and *Steelworkers v. Smoke–Craft, Inc.,* 652 F.2d 1356, 1360 (9th Cir.1981). Therefore, the defendants argue that the court is to decide only whether an arbitration clause exists that requires E & V to arbitrate the dispute concerning the defective construction of the factory. The defendants argue that because the contract between No–Sag and E & V contained a mandatory arbitration clause, the Federal Arbitration Act and the Indiana Uniform Arbitration Act both require that E & V be compelled to arbitrate the issue of assignability, citing *Pathman Construction Co. v. Knox County Hosp. Ass'n.,* 164 Ind.App. 121, 326 N.E.2d 844 (1975).

In reply, E & V argues that the court, not the arbitrator, should decide whether the contract was properly assigned because this issue goes to the heart of the court's determination whether an agreement to arbitrate existed between E & V and L & P.

The court agrees with the plaintiff that the validity of the assignment between LSSC and L & P goes to the existence of a contract to arbitrate and therefore must be determined by the court. As we have stated previously, the issue of arbitrability is "unde-

---

1. The court notes that at the hearing on the preliminary injunction motion on November 29, 1993 E & V indicated that it had abandoned the argument that LSSC does not have the right to institute an arbitration proceeding; their only basis for requesting the injunction against LSSC is the lack of damages.

niably an issue for judicial determination". *Local 103 v. Indiana Constr. Corp.*, 706 F.Supp. 667, 672 (N.D.Ind.1989) (citing *AT & T Technologies Inc.*). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit". *Id.* (citing *Steelworkers v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). The duty to arbitrate originates in a contract; therefore "a compulsory submission to arbitration cannot precede judicial determination that the [ ] agreement does in fact create such a duty." *Id.* (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 544–47, 84 S.Ct. 909, 912–13, 11 L.Ed.2d 898 (1964)).

Moreover, in deciding this issue, the court adopts the reasoning of the Eighth Circuit case of *I.S. Joseph Co., Inc. v. Michigan Sugar Co.* which addressed the issue of the court's role in determining whether a party to a commercial arbitration agreement may be compelled to arbitrate with the assignee of the entity with which it first agreed to arbitrate. 803 F.2d 396, 398 (8th Cir.1986). In *I.S. Joseph Co.* the Eighth Circuit stated that the court, not the arbitrator, must decide the issue of assignment because referral to arbitration of the issue of assignability would require the arbitrator to ultimately determine his jurisdiction by examining contract law principles, which is a function reserved for the court. *Id.* at 400 (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1964); *Johnson Controls, Inc. v. City of Cedar Rapids*, 713 F.2d 370, 373 (8th Cir. 1983); and *American Safety Equipment Corp. v. J.P. Maguire & Co.*, 391 F.2d 821 (2d Cir.1968)). Therefore the court holds that the issue of assignment between LSSC and L & P is one that this court must now decide.

In so holding the court recognizes that the cases cited by the defendants hold that the issue of standing is one for the arbitrator. *See Chicago Typographical Union v. Sun–Times*, 860 F.2d 1420, 1424 (7th Cir.1988); *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986);

and *Steelworkers v. Smoke–Craft, Inc.*, 652 F.2d 1356, 1360 (9th Cir.1981). However, the court finds that the issue of assignability addressed here does not pertain to standing, but to the existence of an agreement to arbitrate between E & V and L & P. The court notes that it considers its present holding consistent with and not contrary to the Seventh Circuit and Supreme Court precedent cited by the defendants. In the cases cited by the defendants the issue of standing arose *after* the court had determined that a valid arbitration agreement existed between the parties. For example in *Steelworkers* two unions acting as joint representatives had an arbitration agreement with the employer. Both unions "properly commenced" arbitration proceedings jointly. 652 F.2d at 1360. The issue of standing arose when, after a stay of the arbitration, only one union, acting alone, continued with the arbitration proceeding. *Id.* at 1360–61. The Seventh Circuit clarified the issue further in *Chicago Typographical Union* by stating that only after the court determines that the parties are obligated to submit the dispute to arbitration, 'procedural' questions, such as standing, are for the arbitrator to determine. 860 F.2d 1420, 1424 (quoting *John Wiley & Sons*, 376 U.S. at 556, 84 S.Ct. at 918). Based on the cases discussed *supra*, the court finds its holding entirely consistent with Seventh Circuit precedence.

*Assignment of the E & V Contract*

■ The defendants argue that the construction contract was properly assigned to L & P as evidenced by excerpts of the sale agreement submitted by the defendants. LSSC and L & P argue that the assignment transaction contemplated that L & P would pursue claims relating to the defective construction of the factory. In support of their contention that the construction contract was assigned as part of the transaction with L & P, LSSC and L & P point to Paragraph 1.02 of the Purchase Agreement between LSSC and L & P which states as follows:

> On the closing date, on the terms and subject to the conditions set forth in this Agreement, Seller shall sell, convey, transfer, assign and deliver to Buyer, and Buyer shall purchase and acquire from Seller, all

of Seller's rights, title and interest in and to the assets, properties and business of Seller as the same may exist at the close of business on the Closing Date ...

In addition, the defendants submit the "Assignment and Bill of Sale" ("Bill of Sale") which was executed pursuant to the Purchase Agreement between LSSC and L & P on July 20, 1990. The Bill of Sale contains a paragraph virtually identical to Paragraph 1.02 of the Purchase Agreement (quoted above). In addition the Bill of Sale lists, in general terms, the subject matter of the sale and assignment and includes inventory, insurance policies and commitments to suppliers.

In reply E & V argues that LSSC did not assign the contract, but rather sold the factory outright "as is". In support of this contention, E & V points to Article II, paragraph 2.21 of the purchase agreement which states as follows:

> *Disclaimer.* Except as set forth in this Article II, seller makes no representation or warranty, express or implied, and the assets and business of the division being transferred to buyer at the closing are to be conveyed hereunder "as is where is" on the closing date, and in their then present condition, and buyer shall rely upon his own examination thereof. In any event, seller makes no warranty of merchantability, suitability or fitness for a particular purpose, or quality, with respect to any of the assets being so transferred, or as to the condition or workmanship thereof or the absence of any defects therein, whether latent or patent.

E & V argues that because L & P bought the factory "as is" from LSSC they have no claim with E & V; L & P accepted the defects. E & V cites *Tudor v. Heugel,* 132 Ind.App. 579, 178 N.E.2d 442 (1961) for the proposition that under the law of caveat emptor L & P could not have a claim for the correction of defects because it purchased the property "as is". In addition E & V submits a copy of the quit-claim deed for the property which, E & V argues, establishes that LSSC made no

warranties for the property. Finally E & V asserts that the sales documents support E & V's theory that LSSC only sold assets to L & P and did not assign the construction contract.

■ Under New York law [2] no particular words or phrases are necessary to effect assignment; a valid assignment merely requires a completed transfer of the interest of the assignor. *Caribe Carriers, Ltd. v. C.E. Heath & Co.,* 784 F.Supp. 1119 (S.D.N.Y. 1992). In this case, LSSC clearly documented its desire and intent to assign its rights in the factory to L & P. One of LSSC's rights was the right to pursue correction of the defects through arbitration. E & V is correct in attaching significance to the "as is where is" language; however the significance is misplaced. The language is generally asserted to limit liability of the *seller* to the buyer under an implied warranty theory. *See APLications, Inc. v. Hewlett–Packard Co.,* 501 F.Supp. 129 (S.D.N.Y.1980), *aff'd,* 672 F.2d 1076 (2d Cir.1982). This language is irrelevant to the assignment of an express contract right to pursue the contractor, who is not a party to the sale contract, for defects in work performed by the contractor under a separate contract. *See Held v. Mitsubishi Aircraft International, Inc.,* 672 F.Supp. 369 (D.Minn.1987). Therefore based on the language of the Purchase Agreement and Bill of Sale between LSSC and L & P, the court holds that the transaction whereby L & P acquired the assets of LSSC was an assignment, rather than a simple sale.

■ Next the plaintiff argues that even if the transaction between LSSC and L & P was an assignment, the assignment was not valid because the contract terms barred assignment. In response the defendants argue that the alleged "non-assignment" clause actually contemplates that the contractor binds himself to the owner and the owner's successor, assigns and legal representatives. The clause reads as follows:

> The Owner and Contractor respectively bind themselves, their partners, successors, assigns and legal representatives to

---

**2.** New York law applies to the interpretation of the Purchase Agreement and Bill of Sale because the documents so provide. *See* Paragraph 11.12

of the Purchase Agreement and paragraph 3 of the Bill of Sale.

the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Contract Documents. Neither party to the contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

AIA General Conditions, par. 13.2.1.

Based on the plain language of the clause the defendants argue that the parties to the original contract understood that each would be bound to the assigns of the other citing *Crown Oil v. Glen Construction,* 320 Md. 546, 578 A.2d 1184 (1990), and *Village of Westville v. Loitz Brothers Constr. Co.,* 165 Ill.App.3d 338, 116 Ill.Dec. 447, 519 N.E.2d 37 (1988). In addition, the defendants argue that LSSC did not assign the "whole contract", as prohibited by the clause, but merely assigned the right to sue for damages; as such the defendants argue that their partial assignment is not barred by the anti-assignment clause, citing *Essex v. Ryan,* 446 N.E.2d 368, 374 (Ind.App.1983); *Cordis Corp. v. Sonics Int'l, Inc.,* 427 So.2d 782 (Fla.App.1983); *Charles L. Bowman & Co. v. Erwin,* 468 F.2d 1293, 1297 (5th Cir.1972); *Ruberoid Co. v. Glassman Construction Co.,* 248 Md. 97, 234 A.2d 875, 878 (1967); *Alldritt v. Kansas Centennial Global Exposition, Inc.,* 189 Kan. 649, 371 P.2d 181 (1962); and *Trubowitch v. Riverbank Canning Co.,* 30 Cal.2d 335, 182 P.2d 182, 185 (1947).

Finally, the defendants rely on *Crown Oil* in which the court analyzed the effect of an assignment on an arbitration clause in a contract that contained a similar non-assignment provision. 578 A.2d at 1192–94. The court said the assignment was valid because the other party to the contract would suffer no detriment by the assignment. The court noted that no novation had occurred and therefore the assignor would remain liable to the other party for obligations under the contract. *Id.* at 1193. Therefore, the defendants argue that the assignment to L & P was not barred by the non-assignment clause

and L & P may now properly institute arbitration against E & V.

In reply E & V argues that LSSC simply could not assign its rights under the construction contract to L & P because the non-assignment clause barred assignment. Under the terms of the non-assignment clause, E & V argues that LSSC could not assign the contract without first obtaining the consent of E & V. Because E & V refused to consent to the assignment, E & V argues that the assignment is ineffective and therefore L & P has no agreement to arbitrate with E & V and may not properly institute an arbitration proceeding against E & V.

In addition, E & V attempts to distinguish *Crown Oil, Trubowitch* and *Ruberoid* in that those cases involved assignment to a party who succeeded to the rights of the "assignor" because of a mere change in form of ownership. E & V suggests that those courts allowed the "assignment" because the owners of the assignor and assignee entities were the same throughout the transactions. E & V argues that these cases are not applicable to the present situation because this case involves more than a mere change in the form of ownership.

The court agrees with the plaintiffs that *Crown Oil, Trubowitch* and *Ruberoid* may be factually distinguished from the present situation because in those cases the assignee was a successor to the assignor. This is clearly not the case between LSSC and L & P. However, those cases recognize general principles of law that are applicable to the present case. For the following reasons, we hold that the partial assignment to L & P is valid and therefore E & V may not enjoin L & P from executing the agreement to arbitrate.

First, the court notes that the meaning of a prohibition on assignment is a matter of interpretation for the court. *Trubowitch* 182 P.2d at 188. In addition, because the clause is a restriction on alienation, it must be strictly construed against the party urging the restriction. *First Bank & Trust v. Novak,* 12 Kan.App.2d 407, 747 P.2d 850, 855 (1987). Here the nonassignment provision appears internally inconsistent: in the first sentence it states that each party is

bound to the assigns of the other while in the next sentence it states that neither party may assign the contract without the consent of the other. However it is important to note that consent is required only where "the contract *as a whole*" is assigned. Reading the two sentences together in order to give meaning to both leads to the interpretation that each party will be bound to the other's assignee for a partial assignment, even where consent is not given.

Next, case law of most states is in accord that a prohibition on assignment does not prohibit assignment of claims for money damages for nonperformance. *Trubowitch* 182 P.2d at 188 (citing 2 Williston, contracts, Rev.Ed. 1217 and collecting cases); *Village of Westville*, 116 Ill.Dec. at 449, 519 N.E.2d at 39 (1988); *Mears Park Holding Corp. v. Morse/Diesel, Inc.*, 427 N.W.2d 281, 283 (Minn.App.1988); *Ford v. Robertson*, 739 S.W.2d 3, 5 (Tenn.App.1987) (stating that the law distinguishes between the right to assign performance and the right to assign damages for breach); *Grady v. Commers Interiors, Inc.*, 268 N.W.2d 823, 824 (S.D.1978) (citing *Trubowitch* and 6A C.J.S. Assignments). In the present situation all the work had been performed and the money paid under the contract at the time of the assignment. The only right remaining under the construction contract was the right to sue for nonperformance or breach. Therefore this was the only right that was assigned to L & P and as such the assignment was not barred by the nonassignment clause.

■ Finally, applying the equitable principles from *Crown Oil, Trubowitch* and *Ruberoid,* the assignment of a contract where the only right remaining is to sue for damages will not prejudice E & V in this case and should be enforced, notwithstanding the nonassignment provision. In *Crown Oil* the court stated that the validity of the assignment depended on whether the interests of "the party protected by the nonassignability of the contract" were affected. *Crown Oil* 578 A.2d at 1193. In that case the interests of the other party were not affected because the assignor remained liable on the contract in that no novation had occurred and the same assets plus additional assets were available to satisfy claims of the other party. *Id.* The facts of the present case are similar to those in *Crown Oil.* Here LSSC remains liable to E & V on the contract because no novation has occurred. *Id.* The assets of the original No Sag division, now owned by L & P, are still available to satisfy any claims E & V may have. Moreover E & V may reach the additional assets of L & P to satisfy claims on the contract. L & P's assets provide a vast pool of resources because of its considerable net worth. Not only is E & V not adversely affected by the assignment, it is in a better position than it was before the assignment. Therefore there are no equitable reasons to prevent this limited assignment from taking effect.

■ Finally, E & V contends, without citing authority, that an arbitration clause is personal and therefore nonassignable. However the error of E & V's argument is obviated by a reading of many of the cases cited *supra* wherein the courts held that arbitration clauses are assignable as part of a contract. *Flender Corp.*, 953 F.2d 273; *I.S. Joseph Co.*, 803 F.2d 396; *Crown Oil*, 578 A.2d 1184; *Village of Westville*, 116 Ill.Dec. 447, 449, 519 N.E.2d 37, 39; *Trubowitch*, 182 P.2d 182. *And see Asset Allocation & Mgmt. Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 574 (7th Cir.1989); *Matter of Chicago, Milwaukee, St. Paul and Pacific Railroad*, 789 F.2d 1281 (7th Cir.1986). Therefore the court rejects the plaintiff's argument that an arbitration clause is nonassignable.

### Denial of Preliminary Injunction

As the foregoing discussion indicates, the plaintiffs have failed to show they have a likelihood of success on the merits of their claim to enjoin the defendants from proceeding with arbitration. Therefore their preliminary injunction motion must be denied.

■ At the close of their reply brief, E & V restates their prayer for relief: enjoin the arbitration or stay the arbitration pending resolution by the state court of the suit against the sub-contractors. A cursory review of the case law reveals that this court may not stay an arbitration pending resolu-

tion of a similar state court action once it is determined that the parties have a right to pursue a claim in arbitration. *Gotshall v. A.G. Edwards & Sons, Inc.,* 701 F.Supp. 675, 678 (N.D.Ill.1988) (citing *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 225, 105 S.Ct. 1238, 1244, 84 L.Ed.2d 158 (1985); *Tai Ping Ins. Co. v. M/V Warschau,* 731 F.2d 1141, 1146 (5th Cir.1984) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (avoidance of piecemeal litigation does not justify staying arbitration). Therefore plaintiff's alternative prayer for relief, to stay the arbitration pending resolution of the Noble Superior Court action, must be denied.

### Conclusion

For the foregoing reasons, the plaintiff Elzinga & Volkers' Preliminary Injunction motion to enjoin the arbitration or, in the alternative, to stay the arbitration is DENIED. The TRO issued in Case Number 57D01–9310–CP–078 in the Noble Superior Court, insofar as it may still be in effect, is hereby dissolved. In addition, this court hereby sets a telephone status conference to discuss further proceedings on defendants LSSC and Leggett & Platt's Motion to Compel Arbitration for the 15 day of December, 1993 at 1:30 p.m.